**COMMERCIAL MOTOR FREIGHT, INC., Plaintiff v. EBRIGHT et, Defendants.**

Common Pleas Court, Franklin County.

No. 161601.   Decided September 21, 1942.

Wilbur E. Benoy, Columbus, for plaintiff.
John M. Woy, Asst. Atty. Gen'l., Columbus, for defendants.

## OPINION

By KING, J.

This action was instituted by the plaintiff, Commercial Motor Freight, Inc., against Don Ebright, individually and as Treasurer of State, and Herschel C. Atkinson, individually, and as Administrator of the Bureau of Unemployment Compensation, in which plaintiff seeks to recover $12623.62 paid as contributions into the Unemployment Compensation fund under written protest.

The cause was submitted to the court upon the petition of the plaintiff, an answer of the defendants consisting of a general denial, testimony which had been taken before this court in the case of State ex Thomas J. Herbert v Commercial Motor Freight, Inc., No. 161295, and an additional agreed statement of facts.

The payments here in question and which plaintiff claims were illegally assessed and collected by the defendants, were based upon compensation paid to certain "owner operators" of tractors and trucks used in transporting freight which plaintiff was called upon to haul in the course of its business.

The status of these "owner operators" was fully considered by this court in the case of State ex v Comercial Motor Freight, Inc., No. 161295, and it was there determined that the relationship between plaintiff and these operators was that of principal and independent contractor and not that of employer and employee.

Having determined, therefore, that the relationship of principal and independent contractor exists between the parties here in question, the sole issue for consideration in this case is whether or not these independent contractors were in employment with Commercial Motor Freight, Inc., under the Unemployment Compensation Law of Ohio.

Section 1345-1c GC, defines employment as it pertains to the Unemployment Compensation Act as follows:

"c. 'Employment' means service, including service performed in interstate commerce performed for remuneration under any contract of hire, written or oral, express or implied.   The term 'Employ-

ment' shall include an individual's entire service performed within or both within and without the state * * *."

In analyzing §1345-1c of the Unemployment Compensation Act, and comparing this section with §1465-61 GC, which section was construed by this court in the case hereinabove referred to, we find that both sections are identical in requiring services to be performed pursuant to a "contract of hire", express or implied, oral or written. In the other case referred to it was determined that the relationship did not come within the definition of "employee" in §1465-61 GC, and the court must necessarily find that the relationship does not come within the terms of employment as found in §1345-1c, hereinabove quoted.

Counsel for defendants, however, contends that even though §1345-1c is not broad enough to include these operators within the definition of "employment" that such definition is broadened and enlarged by §1345-1 D, which sub-section is as follows:

"Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission, that, (1) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact, and (2) such service service is outside the usual course of the business for which such service is performed, and (3) such individual is customarily engaged in an independently established trade, occupation, profession or business."

(It is our conclusion that provision **D applies only** where it has **first been determined** that the work or service **comes within the definition of "employment"** as defined in §1345-1c, and that it was performed for wages or under a contract of hire.) Unless this interpretation is adopted, Section C is surplusage, is inconsistent with section **D** and in our opinion should have been omitted from the act. In other words, if Section **D** were intended as a definition of "employment", it would cover all services performed for remuneration unless the three things mentioned in that section were proven to the satisfaction of the administrator, and hence the requirement of Section C that the services be rendered pursuant to a contract of hire, would be meaningless.

Counsel for defendants admit that the several cases cited by counsel for the plaintiff support plaintiff's contention, but contends that the cases he cited are better reasoned and should be controlling. With this we can not agree. We have attempted to analyze these cases and believe that most of defendants' cases are distinguishable on their facts and the others fail to give a proper consideration to the section comparable with Section C which de-

fines "employment". The cases cited by plaintiff uniformly support our analysis of Sections C and D, and we will quote but from one. In Texas v Bryant, (Tenn.) 152 S. W. (2nd), 627, the court said:

"A careful reading of these sections makes it apparent that the A.B.C. provisions (the three tests) just referred to were not intended as subordinate definitions of employment so as to take employment as described in the act out of the master and servant relationship, but that on the contrary such provisions as are the provisions of the following subsection (7) were intended as exclusions from the act. These three factors are not given for the purpose of determining whether certain labor performances or services come within the term 'employment' as used in the act. This subhead (6) applies only to cases where it has been previously determined that the work or service comes within the term 'employment' as defined in the act and that it was performed for wages or under contract of hire. Until it has been so determined subhead (6) has no application."

We, therefore, after an analyzation of the statutes and the many cases by both counsel, conclude that these "owner operators" are not subject to the Unemployment Compensation Act and plaintiff is not liable for payments into the fund on their behalf.

Counsel for the defendants, subsequent to the submission of the cause, by supplemental brief has raised the question of the jurisdiction of the court to entertain the action and to grant the relief prayed for, contending that the state is being sued to collect by judgment, money in the nature of a refund for taxes which have been paid. We have carefully analyzed defendants' supplemental brief and the authorities therein cited, but are of the opinion that this action is controlled by §§12075 GC et seq., and that the procedure there provided for has been followed in detail. The tax was paid under written protest as required by the amendement of §12077, and plaintiff's intention to sue was there made known. A temporary injunction restraining the State Treasurer from paying over the money to the federal government and requiring him to hold the funds in a special and separate account subject to plaintiff's favor, all pursuant to §12078-1. Suit was instituted within a year as required by §12075. The attorney general, other counsel representing him at the outset of this action, concurred in the proceedings followed.

Therefore, having concluded that this action to recover illegally assessed and collected taxes, is specifically authorized by statute, and having further determined that plaintiff was illegally assessed and there was wrongfully collected unemployment compensation taxes in the amount of $12,623.62, judgment as prayed for in the petition is granted for plaintiff. An entry may be drawn accordingly.